IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

MARK TREVILLION                                                                                    PLAINTIFF

v.                                    NO. 3:14-cv-00223 PSH

CAROLYN W. COLVIN, Acting Commissioner                                         DEFENDANT
of the Social Security Administration

### MEMORANDUM OPINION AND ORDER

Plaintiff Mark Trevillion ("Trevillion") began the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Trevillion maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and offers two reasons why.[1] Trevillion first maintains that his residual functional capacity was not properly assessed. It is his position that he is unable to work because of "chronic and severe right shoulder, right arm and right wrist pain, and low back pain," see Pleading 11 at 9, and the ALJ failed to include "any limitations on Trevillion's ability to reach and handle." See Pleading 11 at 10.

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

The medical evidence reflects that in June of 2008, Trevillion injured his right shoulder, forearm, and wrist when he fell from a ladder onto the deck of a boat. See Transcript at 27-28, 253.[2] He was taken to the Ste. Genevieve County Memorial Hospital where x-rays were taken of his injuries. The x-rays revealed fractures of his "midshaft humerus" and "distal ulnar radius." See Transcript at 254, 256. He was given pain medication, and his arm was splinted and placed in a sling. See Transcript at 274.

Trevillion was transferred to the Timberlake Surgery Center where Dr. Michael Rotman, M.D. ("Rotman") performed surgery on Trevillion's "humerus fracture" and "dislocation of [his] distal radius." See Transcript at 266.[3] In Rotman's post-operative notes, he reported that Trevillion tolerated the procedure "well without complications" and was transferred to a recovery room in "excellent condition." See Transcript at 267. In Rotman's accompanying office visit reports, he opined that Trevillion could possibly return to work by July 9, 2008, but would be limited to strictly "one-handed work with [his] uninjured upper extremity." See Transcript at 286. Rotman estimated that it would take four to six months before Trevillion could return to full duty work. See Transcript at 281.

---

[2] In Trevillion's brief, he represents that he fell from a ladder in June of 2011. See Pleading 11 at 2. The Court has reviewed the record and can find no evidence to support his assertion. The ALJ found that Trevillion fell from a ladder only one time, i.e., in June of 2008. See Transcript at 15. Substantial evidence on the record as a whole supports the ALJ's finding that Trevillion's only fall from a ladder was in June of 2008. See Transcript at 253, 316.

[3] Trevillion experienced such post-operative pain that Dr. Vafa Foroughi, M.D., performed a brachial plexus block to help ease the pain. See Transcript at 268.

Rotman saw Trevillion again in August of 2008. See Transcript at 278-279, 283. Rotman noted that Trevillion's condition was improving, see Transcript at 283, and x-rays showed "early healing and perfect alignment of the humerus …," see Transcript at 278. Rotman observed that Trevillion's wrist looked "quite good considering how bad it was initially …" See Transcript at 278. Rotman nevertheless noted that Trevillion's wrist was "pretty stiff" with only about ten degrees of extension and flexion. See Transcript at 278. He was given a wrist splint to wear as needed. See Transcript at 278. Rotman opined that Trevillion could return to work but was limited to one-handed work. See Transcript at 283. Rotman estimated that it would take two to three months before Trevillion could return to his regular activities at work. See Transcript at 278.

Rotman saw Trevillion again for what appears to have been the last time in September of 2008. See Transcript at 276-277, 282. Trevillion reported little discomfort and noted that he was doing better. See Transcript at 276. Rotman observed, though, that Trevillion's hand and wrist were still swollen, and he could only make a partial fist. See Transcript at 276. Rotman's impressions were as follows: "Mr. Trevillion is healing his humerus fracture. He has healed his wrist fracture. The biggest problem is soft tissue swelling and inability to move his fingers and also some stiffness of the shoulder." See Transcript at 276. Rotman recommended, inter alia, that Trevillion go without a brace and continue therapy. Rotman restricted Trevillion to one-handed work activity with light use of his right hand and opined that it would be three to four months before he could return to his "full activities at work." See Transcript at 276-277.

In November of 2008, Dr. Ron Schechter, M.D. ("Schechter") saw Trevillion for his complaints of shoulder pain. See Transcript at 299-300. Schechter performed a right shoulder manipulation, gave Trevillion two steroid injections, and recommended continued therapy. See Transcript at 299-300.

Trevillion testified during the administrative hearing that he received therapy for approximately ten months after his fall and was under the impression that he would return to work once he completed therapy. See Transcript at 28. He testified that his employer would not let him return to work, though, because he was a liability.

It appears that Trevillion did not receive medical attention again until June of 2011 when he presented to the Ungerank Chiropractic Clinic complaining of neck, mid-back, and low back pain after injuring himself at work. See Transcript at 29, 327-330. He was treated on several occasions during June of 2011, once in October of 2012, and once in December of 2013.

In January of 2013, Dr. Roger Troxel, M.D. ("Troxel") saw Trevillion for a consultative examination. See Transcript at 316-321. In outlining Trevillion's history, Troxel noted, inter alia, that Trevillion "can't get [a] job." See Transcript at 316. Troxel observed that Trevillion had a normal range of motion in his cervical spine but a reduced range of motion in his lumbar spine. See Transcript at 318. Troxel estimated that Trevillion's range of motion in his lumbar spine was seventy percent. See Transcript at 318. Troxel observed that Trevillion had a normal range of motion in his shoulders, elbows, left wrist, hands, hips, knees, and ankles but a decreased range of motion in his

right wrist. See Transcript at 318. Troxel estimated that Trevillion's grip strength in his right wrist was eighty percent. See Transcript at 319. Troxel observed that Trevillion could hold a pen and write, touch fingertips to palm, oppose thumb to fingers, pick up a coin, stand/walk without an assistive device, walk on heel and toes, and squat/arise from a squatting position. See Transcript at 319. Based on the foregoing findings and observations, Troxel opined, inter alia, that Trevillion had a moderately decreased ability to lift, carry, and handle but no decreased ability to walk, stand, sit, and finger. See Transcript at 320.

Troxel saw Trevillion again for his complaints of back pain on what appears to have been two occasions in 2014. See Transcript at 344-347. At one of the examinations, Troxel prepared a note in which he represented the following: "Patient pursing Social Security disabled status and is currently unable to work." See Transcript at 351.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010).

The ALJ assessed Trevillion's residual functional capacity and found that he is capable of performing the full range of sedentary work. Specifically, the ALJ found that although Trevillion has mild to moderate pain, he can "lift/carry and push/pull up to ten pounds, stand/walk for a total of two hours in an eight-hour workday, and sit for up to

six hours in an eight-hour workday." See Transcript at 14. The ALJ found that Trevillion can climb, balance, stoop, bend, crouch, kneel, and crawl but can only do so occasionally. The ALJ did not incorporate a reaching and handling limitation into the assessment.

Substantial evidence on the record as a whole supports the ALJ's assessment of Trevillion's residual functional capacity. The ALJ adequately considered the medical evidence, and it is not the type or nature that one would expect of someone with a disabling shoulder, back, and wrist impairment. After undergoing surgery in June of 2008, the medical treatment Trevillion received was conservative. Schechter performed a right shoulder manipulation in November of 2008 and gave Trevillion two steroid injections, but the record is largely silent as to any other treatment he received for his shoulder. It is true that Trevillion received chiropractic care for his back, and Troxel found that Trevillion has moderate limitations in his lumbar spine and right wrist, but the progress notes from those examinations are unremarkable. They offer little insight into the extent to which his limitations impact his work-related activities.

Trevillion faults the ALJ for failing to give greater consideration to Troxel's note that Trevillion is "… currently unable to work." The Court cannot agree for three reasons. First, the note encroaches upon a matter reserved exclusively to the ALJ. It is axiomatic that "[a] medical source opinion that an applicant is "disabled' or 'unable to work' … involves an issue reserved for the [ALJ] and therefore is not the type of 'medical opinion' to which the [ALJ] gives controlling weight." See Ellis v. Barnhart, 392

F.3d 988, 994 (8th Cir. 2005). Second, Troxel offered nothing to support his representation. Specifically, he offered no medical findings that Trevillion is unable to work. Third, the note is inconsistent with Troxel's findings and observations. A fair reading of Troxel's findings and observations reflect that while Trevillion experienced a reduced range of motion in his lumbar spine and right wrist, the limitations were not so severe to be completely disabling.

The ALJ also adequately considered the non-medical evidence and did so in accordance with the factors outlined in <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984).[4] The ALJ considered Trevillion's daily activities, <u>see</u> Transcript at 16-17, and could and did find that they are inconsistent with his complaints of disabling pain. Trevillion testified during the administrative hearing that his typical day consists of staying around the house, feeding his son's chickens, and visiting a nearby shop. <u>See</u> Transcript at 34. The restrictions on his daily activities, though, appear to be more of a personal choice than the result of a limitation caused by his impairments. He acknowledged during the administrative hearing and in his disability documents that he is capable of, <u>inter alia</u>, attending to his personal care; cleaning and doing laundry; shopping; occasionally playing golf, fishing, and hunting; and playing games with his son. <u>See</u> Transcript at 34, 201-206, 234-239.

---

[4] <u>Polaski v. Heckler</u> requires the ALJ to consider, in addition to the objective medical evidence, the evidence relating to the claimant's daily activities; the duration, frequency, and intensity of his pain; the dosage, effectiveness, and side effects of his medication; precipitating and aggravating factors; and functional restrictions. <u>See</u> <u>Pearsall v. Massanari</u>, 274 F.3d 1211 (8th Cir. 2001).

The ALJ considered Trevillion's use of medication. See Transcript at 15. The ALJ could and did note that Trevillion has not taken prescription medication for his pain since November of 2008 and presently only takes over-the-counter medication for the pain he experiences. See Transcript at 15, 31, 33, 34-35, 341.

The ALJ also considered other matters that call into question Trevillion's credibility regarding his complaints of disabling pain. The ALJ could and did note that Trevillion testified during the administrative hearing that he is capable of lifting and carrying up to ten pounds. See Transcript at 15. His testimony is in contrast to the representation he made in his disability documents that he can lift and carry up to twenty to thirty pounds. See Transcript at 206, 239. The ALJ could and did note that Trevillion received unemployment compensation for a period of time during 2011, see Transcript at 16, 173, which indicates that the recipient is capable of working. The ALJ could and did also note Trevillion's representation to Troxel that Trevillion "can't get [a] job." See Transcript at 16, 316.

Trevillion faults the ALJ for failing to incorporate a reaching and handling limitation into the residual functional capacity assessment. The ALJ's failure to do so was not error. Although Trevillion sustained a serious injury to his right shoulder, forearm, and wrist when he fell from the ladder, the evidence reflects that he largely recovered from his injuries. Rotman anticipated that Trevillion would eventually return to "full activities at work," and Troxel opined that Trevillion only had a moderately decreased ability to handle and no decreased ability to finger.

The characterization of the evidence made by the ALJ is one of the acceptable characterizations. There is no evidence that Trevillion's impairments give rise to work-related limitations greater than what is encompassed by sedentary work.

Trevillion appears to offer a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. Trevillion maintains that the ALJ posed an improper hypothetical question to a vocational expert, and the ALJ erred when he relied upon the vocational expert's answer.

Testimony from a vocational expert is substantial evidence on the record as a whole only when "the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." See Taylor v. Chater, 118 F.3d 1274, 1278 (8th Cir. 1997). Thus, the hypothetical question must include all those impairments that are substantially supported by the record as a whole. See Id.

The ALJ posed a series of hypothetical questions to a vocational expert that incorporated the limitations caused by Trevillion's impairments. See Transcript at 35-37. The vocational expert testified that a hypothetical individual with Trevillion's limitations could not perform Trevillion's past relevant work as a deck hand but could perform other work, e.g., assembly work. The ALJ adopted the vocational expert's answer and found that Trevillion was not disabled for purposes of the Social Security Act.

The ALJ did not err in crafting the questions to the vocational expert. The ALJ's questions were adequately phrased as they captured the concrete consequences of Trevillion's limitations.

On the basis of the foregoing, the Court finds that there is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Trevillion's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 28th day of October, 2015.

_____
UNITED STATES MAGISTRATE JUDGE